## FRIGIDAIRE CORPORATION v. GENERAL NECESSITIES CORPORATION.

### No. 5513.

Circuit Court of Appeals, Sixth Circuit.

Jan. 13, 1931.

Drury W. Cooper, of New York City (Thomas J. Byrne, of New York City, and Harry W. Lindsey, Jr., of Chicago, Ill., on the brief), for appellant.

George R. Frye, of Detroit, Mich. (Swan & Frye, of Detroit, Mich., on the brief), for appellee.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

MOORMAN, Circuit Judge.

Suit for infringement of the Wolf patent, 1,337,175, for a "process of and apparatus for refrigerating." Claims 10, 15, 16, and 18 relating to the apparatus were relied upon. The defenses were invalidity and noninfringement, collateral to which there was presented the question of the validity of a disclaimer as to claims 10 and 15. The trial court doubted the validity of the disclaimer, but, conceiving that it should be allowed under Permutit Co. v. Wadham (C. C. A.) 13 F.(2d) 454, and Michigan Carton Co. v. Sutherland Paper Co. (C. C. A.) 29 F.(2d) 179, treated the two claims as so restricted, and dismissed the bill for lack of patentable invention.

For present purposes we assume, without deciding, that the disclaimer is valid. Claim 15 as limited thereby is representative of the apparatus invention. It relates to a combination including (1) a compressor; (2) an air-cooled condenser composed of metal tubing (copper according to claim 10) not more than one-half of an inch in diameter, and having a comparatively thin wall; (3) an expansion chamber—these three parts being arranged to form a closed circuit for the refrigerating agent; and (4) a fan mounted to effect a circulation of air around the condenser and against the compressor. The apparatus thus constituted is built upon principles that have long been utilized for purposes of artificial refrigeration. Many of the prior refrigerating machines had a compressor, a condenser, and an expansion chamber forming a closed circuit for a refrigerant similar to sulphurous acid, the preferred refrigerant of Wolf. Plainly, therefore, there is nothing new in the arrangement and co-operative functions of these elements in plaintiff's device.

It is claimed, however, that there is patentable novelty in the use of air to cool the condenser. This contention is wholly unsupported by the proofs, for it appears that many of the earlier patents disclose a like use of air, or air and water combined. For example, Johnson, 328,784, states "fans and water evaporation or other means may be applied to the external surface of this radiating coil to assist the cooling of the compressed gas"; and in Evans, 329,380, it is said: "I have substituted for the cold water a current of air, which may be more or less reduced in temperature in any suitable manner, and may be either in a dry or moist condition." Lowe, No. 63,413, provided for either a running stream of water or "a blast of cool air." Air cooling was also contemplated in the British patents Hill, 17,071, Society, etc., 18,858, and the American patent Coleman, 1,014,120. It was similarly old to use a fan for blowing the air over the condenser pipes. Martin and Beath reissue, 4992; Leslie, 493,036; Palmer, 716,091; Audiffren, 898,400. While some of these prior patents did not include an electric motor for driving the fan, Leslie, issued in 1893, shows an electric motor arranged to drive the compressor and also a fan for circulating air over the condenser chamber. This last-mentioned patent is of itself a complete anticipation of any claim of patentability on account of the fan.

Nor can it be maintained that there is patentable novelty in the use of copper tubing for the condenser of three-eighths or less

than one-half of an inch in diameter. There was much evidence to the effect that copper tubing was common in the refrigerating art. Perhaps none of the earlier devices disclose tubing of this exact diametrical size, but copper tubing of such size and many others was common and well known. Wolf stated in his specifications that he had found the best results were obtained by using copper tubing of about three-eighths of an inch in diameter. This he did presumably by testing the various sizes. Obviously it was not invention to select, after such tests, the size from which he had obtained the best results.

Many of the prior patents cited against the patent in suit relate, it is true, to refrigerating devices too large for private households. Upon that difference the plaintiff seeks to hinge invention, contending that such devices are not pertinent citations as against the small and compact apparatus which Wolf devised. It is admitted, however, by plaintiff, as indeed it is shown in the proofs, that the theory of the patent is exactly the same as that of the earlier machines. These older machines were not adapted to household refrigeration in the earlier stages of the art because of lack of power to operate them, but, when electricity became economically available for such purpose, the desirability of adaptation became obvious. Wolf was not the first to recognize the feasibility of such adaptation, for Whitaker, 911,635, Emerson, 962,-704, and Brady, 1,037,423, all contemplated small enough devices for use in homes, hotels, and stores. The conception, therefore, did not originate with Wolf, and, in our opinion, it was not invention to put it into practice by utilizing the well-known elements of the larger devices.

The decree is affirmed.