## WHITING CORPORATION v. MANNING, MAXWELL & MOORE, Inc.
### No. 6610.

Circuit Court of Appeals, Sixth Circuit.
April 9, 1935.

Fred Gerlach, of Chicago, Ill. (Norman H. Gerlach, of Chicago, Ill., on the brief), for appellant.

George L. Chindahl, of Chicago, Ill. (C. Paul Parker, of Chicago, Ill., on the brief), for appellee.

Before MOORMAN, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This is a bill of complaint for infringement of reissue patent No. 17,116, issued

to O. L. Coffey on October 23, 1928, and of patent No. 1,706,211, issued to O. L. Coffey on March 19, 1929, both of which were assigned to appellant. The claims in suit are 1, 2, 9, 31, 40 and 41 of the reissue patent, and Claim 30 of the second Coffey patent.[1] The District Court dismissed the bill upon the ground that the claims in suit are aggregational in character.

The principal object of the reissue patent is to provide a drop-pit mechanism for unwheeling locomotives through a wheel-carrying mechanism operating in the pit, adapted to transport wheels from a vehicle such as a locomotive to a point on another track, in such position that they may be rolled away for work thereon. It applies to a device which is operative "to selectively transport wheels from separate locomotives on a multiplicity of separated tracks to a common point of delivery of the wheels" for work thereon. In the second patent, the object stated in substance is to provide improved controlling mechanism in such drop-pits by the use of an electric motor for driving the gearing employed to lift and lower the drop-table mechanism so that the table will be operated at differential speeds, and automatic control mechanism for controlling both the high and the low limit of the lifting mechanism.

While the patents were issued for a so-called "mechanism," they involve a number of successive steps and different structures. The locomotive wheels are "spotted" on a releasable table, which is a section of track mounted on a platform, bridging a transverse pit in which a trolley on wheels is moved directly beneath the table. The trolley supports the carriage, which ascends until it comes in contact with and raises the table so that the wheels may be unfastened and the sliding bolts withdrawn which originally supported the table. Then the carriage is lowered so that the wheels resting on the releasable table will pass under other tables on other tracks. The trolley is moved to a point where the wheels are rolled away to be replaced by others, or where a heavy crane picks them out of the pit and substitutes other wheels to be mounted upon the locomotive by a reverse process.

The patented carriage is raised by means of revolving nuts, geared to an electric motor mounted on the carriage, which turn about four rigidly fastened screws forming the supports for the carriage. Appellee's device is raised by means of flat cables, suspended from each of the four corner posts, and wound up on drums driven by an electric motor. Appellee uses ordinary cams purchased in the open market and fastened on the corner posts for limit switches, which prohibit the movement of the elevator beyond the upper and lower extremes of the shaft. The patent describes a

---

[1] Claim 1 of the reissue patent:

"In mechanism of the class described, the combination with means passing a wheeled vehicle over the ground, a pit below it having wheel tables each equipped with means detachably latching it across the pit, and a track in the bottom of the pit passing under said tables, of a trolley travelable along said track, a table elevating carriage, engageable with and separable from a table, on and reciprocal vertically above the trolley, and movable between a position where it engages and lifts a table high enough so its latching mechanism may be released and a position low enough so that the trolley with said table and the wheeled load therein may move along said track under one other such wheel table, and mechanism for raising and lowering said carriage comprising a motor fixedly mounted on and movable vertically with the table-engaging carriage."

The other claims of the reissue patent are in substance the same as Claim 1 except that Claim 2 discloses gearing driven by the motor. Claim 9 discloses a table with rail sections thereon, and comprising longitudinal and cross-girders secured together to form a rigid structure, the girders being adapted to interfit with girders upon the carriage. Claim 31 discloses latching means comprising lateral sliding bolts in the horizontal plane of the girders. Claim 40 discloses means independent of the motor for propelling the trolley, and Claim 41 discloses manually operable gearing for propelling the trolley.

Claim 30 of the second Coffey patent reads as follows:

"In mechanism of the class described, the combination with a pit and a drop-table adapted to move vertically in the pit, of a trolley mounted to travel laterally in the pit, lifting mechanism on the trolley, for shifting the table, comprising an electric motor and a carriage separably engaging said table, and on which the table is mounted, controlling means for the motor for rendering the motor inoperative when the carriage reaches its high limit comprising a switch on the carriage and a connection between the carriage and the trolley for operating said switch."

cam for the lower limit switch, but due to the fact that a cam cannot be fastened upon a screw, a lever arrangement for operating the upper limit switch is indicated. The trolley of the patent is moved manually along the pits by a hand-ratchet similar in principle to those employed for propelling hand-cars, while appellee's trolley may be moved either by hand or by motive power.

Appellee conceded that the language of the claims was readable upon its structure with the exception of Claim 9 of the reissue patent and Claim 30 of the second Coffey patent. The question of the infringement of both these claims is immaterial because the claims in suit are void for lack of invention, in that they constitute aggregations.

The drop-pits in question are "almost as old as the railroad systems themselves." The British patent to Strong, No. 2,646 (1854), discloses a table, a carriage to lift and lower the table, and carry the wheels to one side. The table top is raised and lowered by four rotatable screws. In this device the mechanism is hand-operated. The Austrian patent, No. 42,214 (1910), discloses a track or trolley with wheels running along the tracks at the bottom of a pit. The table is separable, as in the patent in suit, from the hoisting mechanism, and carries rails at its top in alignment with the track rails. The latches shown in the reissue patent, Claim 31, are present in the Austrian patent. This patent also discloses a divisible table, to be used either with a truck or with a single pair of wheels.

The drop-pit in the New York Central shops at Harmon, New York, was installed in 1912. It is operated by hydraulic power. It is similar to the patented mechanism in that it embodies the releasable table which can be latched in place elevated, with its rails in alignment with the track rails, and also has two such tables which are served by the same trolley, thus being able to operate on two separated tracks. This installation has swinging latches which fasten the table to the pit walls, whereas the Strong patent employed sliding bolts (Claim 31, reissue patent) for this purpose. The British patent to Cunningham, No. 10,274 (1906), has a drop-pit mechanism by which a car can be removed from the middle of a train of cars. It discloses a pit with a trolley having rails which can be brought into alignment with the track rails.

In the Townsend patent, No. 1,543,807 (1925), a sliding bolt is disclosed similar to that employed in Claim 31, reissue patent. The Waters patent, No. 1,571,029 (1926), reissue patent No. 16,898, also shows the locking of a rising and falling table by means of sliding bolts. The addition of gearing disclosed in Claim 2 and of means for propelling the trolley in Claim 40 and Claim 41 obviously involves no patentable novelty. These methods had previously been adopted by railroads on hand-cars.

The high-limit switch which is a feature of Claim 30 of the second Coffey patent is an adaptation of the ordinary high-limit switch used to control the operation of an elevator. These limit switches are sold on the open market. They are old and in common use in similar environments, and hence add nothing to the patentability of the mechanism in suit.

The claims in suit disclose no patentable novelty. In addition, the claims are for aggregations rather than for true combinations. In a patentable combination, each of the various elements performs its separate function, and all cooperate in the production of the unitary result. Kodel Electric & Mfg. Co. v. Warren Telechron Clock Co., 62 F.(2d) 692 (C. C. A. 6). Here there is no essential coaction between the table-lifting means and the table. The table is a mere load lifted by the carriage. The peculiar construction of the table and the carriage, producing the so-called interfit, does not affect or modify the plurality of tables. The trolley-propelling means is merely an additional mechanical contrivance, and not an essential part of the other elements of the claims. In our opinion the claims of the patent in suit present nothing more than an aggregation of old elements within the mechanical skill of the trade. Cf. Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196; Gas Machinery Co. v. United Gas Improvement Co., 228 F. 684 (C. C. A. 6); Scott v. Harris Automatic Press Co., 284 F. 778 (C. C. A. 6); Indiana Lamp Co. v. Alvo Mfg. Co., 296 F. 623 (C. C. A. 6); In re Hueber (Cust. & Pat. App.) 70 F.(2d) 906.

The decree of the District Court is affirmed.