## THOMAS FRENCH & SONS, Limited, v. KRAUSS.

### No. 8193.

District Court, E. D. New York.
July 2, 1937.

H. C. Bierman, of New York City, for plaintiff.

890

Bernard F. Nathan, of New York City, (Harry Dexter Peck, of Providence, R. I., of counsel), for defendant.

GALSTON, District Judge.

This is a patent infringement suit. The pleadings present an unusual situation. On December 11, 1936, the complaint was filed alleging the infringement of letters patent No. 1,980,048, granted to George F. French on November 6, 1934. On February 9, 1937, it was stipulated by the parties that reissue patent No. 20,257, dated January 26, 1937, to George F. French "be substituted for and in place of the original patent, no. 1,980,048, of which the first mentioned patent is a re-issue, with the same force and effect as if the bill of complaint had been filed based upon said re-issue patent no. 20,257."

The patent in suit is concerned with the reeling of a ladder web, more generally known as Venetian blind ladder web, in such manner as to avoid distortion of the material. The application recites that ladder web is required to be reeled so that the web when used shall support the laths or slats of a Venetian blind with all such laths parallel and equidistant from one another. Accordingly the relationship between the two outer thicknesses and between the cross-tapes must be maintained undistorted if the whole of the web is to be usable. Certain imperfections in the reeling of ladder web resulted in failure to maintain "the original relationship between the outer thicknesses and the cross tapes for the whole length of the web, portions of the web from the inner end being distorted and permanently damaged with consequent waste of material." The object of the invention, therefore, was to reel the ladder web without damage to any portion of its length and to avoid waste. The discovery that the difficulties of the earlier practice were due to the reeling of the web on a smaller diameter core is stated to be the act of invention, though all but one of the claims of the original patent related to the patentee's apparatus for reeling Venetian ladder web. It may be observed that ladder webbing in its present form has been in use for years. Claims 7, 8, and 9 were added by the reissue application. They are so-called product claims. So that now three classes of claims are presented by the inventor to cover his invention. First there is the process claim; secondly the special apparatus for the operation of the process; and thirdly the three product claims. The specification recites: "According to the invention, instead of reeling the web upon a relatively small centre block, it is reeled upon a relatively large block, or ring, both prior to and after cutting the superfluous threads to allow the separation of the webs, the diameter of the block or ring being equivalent to the size of coil at which, using the ½ inch spindle, the layers or thicknesses of the web cease to coil in other than a regular (non-distorted) relationship."

Claims 1, 7, 8, and 9 are in issue. The first claim relates to the process of reeling the Venetian blind. The other claims refer to the product. The defendant is in the business of selling ladder web. Since it appeared that he was not a manufacturer and that he did not in any way control the manufacturing process, I held at the conclusion of the trial that no infringement had been proved of claim 1.

Claims 7 and 8 are substantially alike and it will be sufficient, therefore, to consider either one. Claim 7 reads: "A Venetian blind ladder web or the like having two similar broad main tapes and provided with inter-connecting cross-tapes between the main tapes at intervals in its length a ring, said ladder web being reeled on said ring, the diameter of said ring being such that the difference in length of the two main tapes of the web in proximity to said ring is within the elastic limit of the web, whereby the web may be reeled and re-reeled without permanent distortion of the parts of the web, and the parts of the web when the latter is removed for use, will automatically resume their normal initial relative positions."

To increase the size or degree of an element or thing is not invention. Here then we have broadly stated that the alleged invention consists in meeting the difficulties described by increasing the diameter of the core on which fabric is rolled or reeled from 1½ inches to approximately 5 inches. Certainly it was not unusual to wind fabrics around a core long before the date of this alleged invention. Moreover, it is certainly obvious to any one who seeks to reel or wind fabric around a core and avoid wrinkling or distorting the fabric that he can achieve his purpose by winding the fabric tightly. Equally obvious, it would appear, that the use of a large diameter would facilitate the specific object sought by this inventor.

Finally it should be observed that the sort of experiment required for determining the preferred diameter of the core calls no inventive act into play. It would seem that if necessary the prior art would have revealed a great deal more than that which was proved at the trial. However, we are limited to such proof.

Murdock, testifying for the defendant, said that he was a manufacturer of webbing and that he was employed as early as 1916 in the textile field, having at that time been associated with the Buffalo Weaving & Belting Company. That company made medium and heavy cotton weavings and white cotton belting. It was their practice to wind white cotton belting of various plies, from two to ten, on cores about 4¾ inches in diameter. A typical wooden core, such as was used, was produced.

In the latter part of 1923, in association with J. S. Burnett, Murdock organized the Southern Weaving Company and was associated with that company until December, 1935. He also organized and was associated with the Southern Friction Fabric Company of Charlotte, N. C. That company sold asbestos brake lining. It was put up in rolls without a core but wound on a mandrel of between three and four inches.

The Southern Weaving Company also made medium and heavy webbings and tapes, using cotton, linen, jute, and other fibers. These were wound in rolls. In 1925 it made hood lacing. At first this was wound on a 1-inch square spindle wind. Trouble was encountered, the material was found creased and marked at the inside and the rolls distorted. To overcome the difficulty a stock machine was used for winding the material around a 3-inch outside diameter core. The machine was identified as having been purchased from the Universal Winding Company some time in 1926 or 1927.

The Southern Weaving Company in 1927 also made shock absorber webbing. Originally this was wound on a core or reel ¾ of an inch square. Distortion of the thick web resulted from the use of a small core. This was eliminated by using a 2-inch square mandrel and later by employing a 2½-inch round mandrel. A mandrel used by the Southern Weaving Company in 1928 was introduced in evidence.

Corroboration of the practice in the Southern Weaving Company was given by Burnett. He said that they began manufacturing hood lacing and shock absorber

webbing in 1925 or 1926. Tape such as Exhibit O was first wound on a 1-inch core. Complaints were received from customers because of the badly crimped condition of the material. Then they adopted a wooden roll, approximately 3½ to 4 inches in diameter. It was found that the wooden roll crushed in transit and thereupon the Universal Winding Company machine was obtained and the material wound on a core similar to that shown in Defendant's Exhibit U.

Though it is true that evidence in support of prior uses must be clear and convincing, the testimony of Murdock and Burnett left no doubt in my mind that they encountered difficulties in winding fabric on cores of small diameter and that they solved the problem encountered in the same way that French did, by increasing the core on which the material was wound. This they did long before French.

Another prior use was that of the Burrell Belting Company. Mayer, president of the company, formerly a superintendent and general manager, testified that the company made conveyor belting and transmission belting. Sheets for the belting were purchased in 50-inch widths in rolls between 50 and 150 yards, and delivered on cores of various sizes. A core produced had an outside diameter of 1¼ inch. Sometimes cores were 2 inches in diameter. The wide material was then divided by the Burrell Company into various widths. A specimen of belting made with bound edges was produced. When this belting of a long length, 50 or 150 yards, was wound on small diameter cores, the inside of the roll was found to be wrinkled. Waste of material also resulted. Thereupon the Burrell corporation employed cores of larger diameter, the outside measurement of which was 5⅛ inches. Such cores were used as early as 1927 and have been used continuously since. Invoices showing the purchase of such cores bearing date February 24, 1927, are in evidence. Other invoices show repeated purchases from 1927 on of similar cores. Invoices from the Burrell Company to Savage Brothers Company, the first bearing date July 19, 1927, show sales of belting with plain edges and some with bound edges. See Defendant's Exhibit H and I. Presumably defendant means that these sales were of material wound on the 5-inch cores.

From these various uses the conclusion must be drawn that prior to French it was

old to wind diverse materials on cores of at least 5 inches in diameter. It is difficult then to see how any invention was involved in French's contribution. Moreover, it is doubtful whether the mere act of increasing the diameter of the cores, to avoid wrinkling of the material and wastage, previously used in the French mills, amounted to invention. Certainly changes in form, proportions, or degree do not involve invention. Smith v. Nichols, 88 U.S. (21 Wall.) 112, 22 L.Ed. 566; Roberts v. Ryer, 91 U.S. 150, 23 L.Ed. 267; Preston v. Manard, 116 U.S. 661, 6 S.Ct. 695, 29 L.Ed. 763; David Belais, Inc., v. Goldsmith Brothers Smelting & Refining Co. (C.C.A.) 10 F. (2d) 673; Frigidaire Corporation v. General Necessities Corporation (C.C.A.) 46 F.(2d) 58.

I think these claims and the product claims of the reissue patent in issue are clearly void for want of invention.

Moreover, since claims 7, 8, and 9 are not directed to a product which is the necessary result of the process claim, it may well be contended that they are directed to a different invention from that suggested in the original patent. The process claim certainly in terms does not require the web to be wound upon a ring or core. Its limitation or teaching is that "the reeling is commenced on a diameter of reel, etc." So far as the process is defined in the claim, if the ladder web be wound on a mandrel or spindle of the specified diameter and later the roll of web is removed from the mandrel, the process of the claim would have been practiced. Clearly, however, such product is not that defined in claims 7, 8, and 9, for each of those claims defines a "ring" as a positive element. It is interesting to observe that in the reissue application as originally presented, claims 7, 8, and 9 were rejected because the ring was not included as a positive element.

In this view of the matter it is not necessary to pass on the question of infringement but it may be noted that Plaintiff's Exhibit 10, on which infringement is based, discloses a 4-inch core and certainly therefore does not infringe claim 9 which calls specifically for a ring of approximately 5 inches. Moreover, in respect to the infringement of claims 7 and 8, it must be remarked that Exhibit 10 was sold before the issue of the reissue patent in suit. The plaintiff relies on the testimony of Harris that he knew the defendant continued to sell ladder webbing on a core identical with the core on plaintiff's Exhibit 10 after the issue of the reissue patent in suit; and points also to defendant's answer to interrogatory No. 1 in which defendant admits that it did sell an article comprising a core having a diameter of about 4 inches, and ladder tape wound thereon, after the issue of the reissue patent in suit. The difficulty with the proof is that Plaintiff's Exhibit 10 was sold by the defendant on December 10, 1936, before the issue of the reissue patent, and there is no proof of the sale of an alleged infringing article between the date of the reissue and the filing of the bill of complaint.

For the foregoing reasons the complaint will be dismissed. If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.