## BRIGGS & STRATTON CORPORATION v. QUICK ACTION IGNITION CO.

### No. 6271.

Circuit Court of Appeals, Seventh Circuit.
Nov. 4, 1937.

Rehearing Denied Dec. 14, 1937.

208

Ira Milton Jones, of Milwaukee, Wis., and George A. Chritton and Richard Spencer, both of Chicago, Ill., for appellant.

N. S. Amstutz, of Valparaiso, Ind., and John G. Yeagley and J. Walter Yeagley, both of South Bend, Ind., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Sought to be reversed is a decree finding valid and infringed claims 7 and 8 of patent No. 1,275,294 and claim 3 of patent No. 1,338,151, both assigned to appellee by the inventor Oglesby. The first is for "a combined internal combustion engine and magneto," and the second, "detachable magneto-armature heads and core." The claims appear in the footnote.[1]

Oglesby's device of patent No. 1,275,294, had to do with a magneto attached to and combined with an internal combustion engine. The application was dated January 5, 1917, and the grant, August 13, 1918. The suit included claims 1 to 6 of the first patent, as well as claims 7 and 8, but the District Court refused to grant relief upon all except 7 and 8. Appellant insists that the patent is anticipated by prior patents and uses, and that, in view of the existing prior art, only mechanical skill was involved in devising the combination claimed.

Claims 7 and 8 of patent No. 1,275,294 describe a combination of the prior art flywheel magneto applied to the well known crankcase of an internal combustion engine (Mueller 1,147,038), centered and mounted upon the front of the crankshaft of such case. Flywheel magnetos were old, but appellee claims that Oglesby achieved more efficient operation at low speed and greater ease of assembling. Specifically it relies upon the combination of a crankcase wherein the rotating shaft carries a removable end plate, which also serves as a bearing for the shaft, an armature on the plate, a circuit breaker and condenser "placed adjacent thereto" or "supported on the crankcase end plate, adjacent the path of travel" of a field magnet, adapted to pass by the armature, and a cam carried by the shaft for operating the circuit breaker to produce periodic currents of an undirectional character in the armature coil as the shaft is revolved. This, it says, is a combination both novel and useful, constituting a product of inventive genius.

Claims 7 and 8 differ from claims 1 and 6, upon which the court refused to grant relief, only by adding the circuit breaker and operating it by means of a cam carried by the shaft, and a careful analysis of the evidence convinces us that the claim for distinction between Oglesby and the prior art must lie chiefly in the alleged addition of this element. Mueller, in patent No. 1,-

---

[1] Claims 7 and 8 of patent No. 1,275,294. Claim 7—In internal combustion engines, a crankcase, a shaft rotatable therein, a removable end plate for said case also serving as a bearing for shaft, an armature supported by the plate, a circuit breaker and condenser placed adjacent thereto, a field magnet attached to the shaft adapted to pass by the armature, and a cam carried by the shaft for periodically operating the circuit breaker as the shaft is revolved.

Claim 8—In internal combustion engines, a crankcase, a removable and plate therefor, a crankshaft rotatable therein, a fly wheel a field magnet and cam carried by the shaft, an armature comprising a coil connected to a circuit breaker and condenser supported on the crankcase and plate adjacent the path of travel of the field magnet, and adapted through such rotation to have periodic currents generated in its coil and the circuit breaker actuated by the cam as the shaft revolves.

Claim 3 of patent No. 1,338,151. An article of manufacture comprising a combined magnet core and curved head lamination formed integrally with each other, similarly formed duplicate laminae assembled adjacent each other to constitute a group, independently formed head laminae similarly curved and assembled adjacent the other heads to constitute a half-core unit, duplicate core and head parts constituting a second group, similarly shaped, curved heads assembled with the heads of the second group, to also constitute a half-core unit both units being assembled together so as to form a winding space between and beneath the heads.

147,038, built a unitary compact fly-wheel magneto mounted upon the crankshaft, but he did not provide that the plate upon which the magneto was mounted should be utilized also as the end plate of the crank case. He recognized that the generator type flywheel magneto for internal combustion engines was old in the art and alleged that he was endeavoring to simplify the structure, reduce the cost of construction, and more fully to expose the timer mechanism and electrical connections, whereby repairs and readjustments might be facilitated. He placed the magneto at the end of the crankshaft, but he did not, as Oglesby did, substitute for the conventional crankcase end plate, the outer surface of the magneto container. He specified that in his combination there should be used "a circuit interrupter," but he did not use the specific construction or location of Oglesby. We are convinced that all that Oglesby did was to take Mueller's crankcase and mount it on the crankcase so as to obviate the use of the conventional end plate by substituting in lieu thereof the old mounting plate of flywheel magnetos, such as Mueller, and relocate the circuit breaker. Apparently all that a skilled mechanic dealing in the art, with Mueller before him, needed to do, in applying the flywheel magneto of Mueller to the conventional internal combustion engine crankshaft, was to make these changes. The elements of both magnetos are the same, and the results obtained are identical.

Nor was Mueller the first to mount his magneto upon the end of the crankcase. Podlesak, 948,483, application filed 1901, mounted a magneto in the flywheel of the engine at the head of the crankcase and provided a make and break ignition mechanism accomplishing the interruption to the current by the use of a cam oscillated and retained in any desired position of adjustment. This make and break connection, he said, might "be of any well known and suitable construction."

Oglesby was delving in an active and rather crowded art, and the question arises, Did he make a combination, similar to those which existed previously, performing the same functions that those performed, of such greater facility, ease, and simplicity as to constitute invention? Is what he did anything more than what would have occurred to any ordinary skilled engineer with the prior art before him? We think not.

We think that the most that can be said is that he gave a somewhat different form to a familiar combination, using the same elements, without achieving from them any new functions and without accomplishing any new result; that he merely carried forward the original thought by eliminating one plate on the end of a crankshaft and by a slightly different location of the recognized essential circuit breaker. These two changes it seems to us did not involve invention. They were rather a mechanical readaptation of familiar devices.

We have not mentioned the prior uses. The testimony of both parties as to the dates of conception of respective devices is based largely upon oral testimony as to what occurred more than 15 years before without substantiating documentary evidence. Oglesby testified originally that his date of conception was in 1917. He subsequently changed his story and offered the testimony of other witnesses, depending entirely upon their personal recollection, to carry his date back to early 1915. Appellant produced rather convincing testimony of a prior use of what, to our thinking, constitutes an anticipatory device by Evinrude, but again the testimony is almost wholly dependent upon the parol testimony of witnesses as to personal recollection of long past events. If Evinrude was first, as we are inclined to believe, for it was certain that his device was conceived in the fall of 1914 and the very first of 1915, his teachings were clearly anticipatory of everything that Oglesby did. The location of the circuit breaker was not the same, but with the recognition of the essential presence of a circuit breaker, its location again was a matter of the exercise of mere mechanical skill. However, in reaching our conclusion we have not grounded it upon the alleged prior uses. It is not necessary to do so in view of our conclusions as to the effect of the prior art in the way of prior patents.

Courts are loathe to ground final decisions as to priority upon the parol testimony of witnesses, many of whom are related by consanguinity or other ties, as to events having to do with the precise and detailed construction of a specific electrical combination some twenty years ago. Consequently we have preferred to base our

conclusion upon the documentary evidence rather than upon the parol testimony.

In patent No. 1,338,151, Oglesby claimed that he had created an improvement in a magneto core structure which included duplicate laminae groupings adapted to be interlaced so as to permit prewinding of the coil apart from the core assembly and the duplicate laminae groupings then assembled with the coil and, when assembled, forming a winding space in which the coil is received, which space is "between and beneath the heads." The claim includes the word "beneath." In our opinion it was inadvertently included and should be given no effect. But we are further of the opinion that British patent No. 14,732 of 1902 discloses a structure so similar to that of Oglesby as to be identically equivalent thereto. In each are armature arms; in each, winding of a coil on a space between the armatures, which are open at the opposite side of the device. If we were to give any effect to the word "beneath," clearly the device of appellant would not come within the teaching of the patent. But, ignoring that word, we are unable to perceive that there is any invention in this patent. If it should be held valid, there is no infringement.

The decree of the District Court is reversed, with directions to proceed in accord with this opinion.

