## SHALER CO. v. RITE–WAY PRODUCTS, Inc., et al.

## RITE–WAY PRODUCTS, Inc., et al. v. SHALER CO.

### Nos. 7894, 7895.

Circuit Court of Appeals, Sixth Circuit.
Nov. 7, 1939.

S. L. Wheeler, of Milwaukee, Wis. (Henry J. Livingston, and John W. Farley,

both of Memphis, Tenn., and S. L. Wheeler, Leverett C. Wheeler, and Warren G. Wheeler, all of Milwaukee, Wis., on the brief), for Shaler Co.

Frank E. Liverance, Jr., of Grand Rapids, Mich., and John B. Snowden, II, of Memphis, Tenn., for Rite-Way Products, Inc., and others.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

By bill in equity the appellant charged appellees with patent infringement, infringement of registered trade-mark and unfair competition. From a decree adjudicating the patent invalid and denying injunctive relief for trade-mark infringement, it appealed. An adjudication of unfair competition and its restraint is the subject matter of the cross-appeal.

The patent in suit is Hanson No. 1,970,-698, filed October 14, 1932, for a portable repair vulcanizer. The issue in respect to it is solely that of validity; infringement, if valid, not being controverted. The patent is one in a crowded art and is frankly but for improvement in that type of portable repair vulcanizer in which a predetermined quantity of fuel in the form of a plate or disk is applied to a metal platen or pan which is clamped upon a patch to be vulcanized to a tire tube or other article, and the objects of the invention are to provide a clamping mechanism with means for holding the fuel in contact with the platen during initial combustion, to provide improved means for centering the platen upon the patch so as to prevent its shifting during adjustment, and to provide means for preventing substitution of fuel and the lifting of the disks by accumulated gases. Its assertedly novel features are the "notches" in the platen adapted to receive corresponding V-shaped projections on the arms of the spider.

While much is claimed for the invention, the scientific research which led to the discovery and the scientific character of the result, little discussion need be given the patent. The general idea of the improvement is old, demonstrated by the patents to Low, No. 1,163,629; Naysmith, No. 1,225,845; White, No. 1,234,431, and Hagen, No. 1,252,106. Expedients for centering the platen and preventing its shifting during adjustment were objectives of Low, Naysmith and White, and also of the patents to Heim, No. 1,270,154, and Low, No. 1,315,731. It may well be granted that Hanson disclosed centering means better serving the purpose of tire repair than the expedients of the prior art, but not every improvement necessarily denotes invention and the adoption of a well-known mechanical expedient is within the expected skill of the art. The case is not unlike that of the steering-wheel mechanism adjudicated in Beck-Frost Corporation v. Ford Motor Company, 6 Cir., 44 F.2d 519, wherein we held that the mere shaping of the ends of spider arms, so that in engagement with the hub of a steering-wheel they might prevent rotation, lacked the quality of invention.

The patent in suit was held invalid by the Seventh Circuit Court of Appeals in Speaker et al. v. Shaler Company, 87 F.2d 985. There it was said that Hanson but took an old platen, an old patch, an old body of solidified fuel and an old clamp and utilized them exactly as they had been utilized before in vulcanizing with but the addition of the notches in the wall and spider arm, and it was held that such improvement in an art so rich in prior teachings was nothing more than the exercise of mechanical skill not rising to invention. The prior art is sufficiently delineated in the opinion in that case as it is in the opinion below, 19 F.Supp. 804. It is unnecessary for us to add to the discussion. We hold the Hanson patent invalid for want of invention.

The appellant had registered in the United States Patent Office a trade-mark which included the designation "Hot Patches" together with the representation of heat waves emanating from the letters and a circular design containing a representation of the equipment. Subsequently, without waiving common law rights, it disclaimed the word "Patches" and the representation of the tool apart from the mark as shown. Also, without waiver of common law rights it disclaimed the words "Hot Patches" in a previous registration apart from a mark there registered of which the salient feature was a diamond shaped design. While there is no specific provision for disclaimers in the trade-mark statute, the practice of using them has grown up in the patent office and has received the approval and commendation of the courts. Estate of P. D. Beckwith v. Commissioner of Patents, 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705. It seemed obvious

that no one could be deceived as to the scope of a mark from which unregisterable matter had been deleted, and that the registrant would be precluded by his disclaimer, from setting up in the future any exclusive right to the disclaimed part of it. Insofar as it is charged that the appellee infringed the trade-mark by the adoption in its advertising and labels of the phrase "Hot Patches," we must hold with the court below that there was no infringement.

 This does not, however, reach the question of unfair competition. The manufacturer of particular goods is entitled to protection of the reputation they have acquired against unfair dealings, whether there be a technical trade-mark or not, the essence of the wrong being in the sale of the goods of one manufacturer or vendor for those of another. Elgin National Watch Company v. Illinois Watch Case Company, 179 U.S. 665, 21 S.Ct. 270, 45 L. Ed. 365. There was evidence, and the court below found, that for many years the appellant had used the words "Hot Patches" extensively in connection with its merchandise; had spent large sums of money putting its products on the market; had established a nation-wide field of activity, accumulating numerous dealers in its products, and had introduced feature advertising stressing the words "Hot Patches." It concluded from this that the phrase had acquired a secondary meaning denoting origin, and that its use or that of a substantial equivalent tending to deceive was an invasion of the appellant's right. We are not persuaded that there was error in this finding.

The decree, however, not only restrained the use of the phrase "Hot Patches," but also the phrase "Hot Shot," or "Hot" and "Hot Shot" in combination with patches even with intervening words. In this respect we think it was too broad. There is no resemblance between the phrase "Hot Shot" and "Hot Patches" except in the inclusion of the word "Hot" which is used to designate a multitude of commercial articles, either alone or in combination. To preclude the use of the phrase "Hot Shot" because of some resemblance to the phrase "Hot Patches," would give to the latter the full effect of a trade-mark while denying its validity as such. Standard Paint Company v. Trinidad Asphalt Manufacturing Company, 220 U.S. 446, 461, 31 S.Ct. 456, 55 L.Ed. 536. The evidence disclosed and the court found that the appel-

lees had been guilty of no unfair competition in other respects. The adapters complained of were but unpatented articles of commerce, and their sale by the appellees was lawful. Since the Hanson patent is held invalid, no question of contributory infringement may arise from their use or sale.

The decree below is amended freeing from restraint the word "Hot" or the phrase "Hot Shot" when used otherwise than in immediate and contiguous association with the word "Patches," and the decree as so amended is affirmed.