## COVER v. CHICAGO EYE SHIELD CO.
### (two cases).
### Nos. 7036, 7037.

Circuit Court of Appeals, Seventh Circuit.
March 20, 1940.

Rehearing Denied April 29, 1940.

Joshua R. H. Potts, Eugene Vincent Clarke, and Basel H. Brune, all of Chicago, Ill., for Harvey S. Cover.

F. Allan Minne, of Chicago, Ill., for Chicago Eye Shield Co.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

Cover charged the Chicago Eye Shield Company with infringement of six United States patents of which he was the owner and patentee. The patent numbers, with the several dates of application and issue, and the claims involved, are in the margin[1] and they will be separately referred to hereafter by the last two digits of their respective numbers. The answer was invalidity and non-infringement.

The court held that claim 4 of No. 95 was invalid; that claim 2 of No. 30 was infringed but invalid on account of anticipation by prior use; that claim 3 of No. 30 and claims 2 and 3 of No. 70 were not infringed; and that claims 12 and 14 of No. 64, and claims 1, 2 and 3 of No. 83 were valid but not infringed. From these rulings Cover appeals under cause No. 7036. The court held that claim 1 of patent No. 70, and claims 1, 2 and 3 of patent No. 31 were valid and infringed by the Company. From these rulings the Company appeals under cause No. 7037. The two cases were consolidated for hearing in this court.

All of these patents relate to respirators and their improvements, and we shall describe the first patent issued, No. 64, and later discuss the special objects which each subsequent patent stresses. The object of this patent is the production of an economical and efficient device to be used for protecting the user from dust, smoke and noxious gases, without occasioning great difficulty in the user's breathing. Other objects are to provide such a device to which auxilliary filler chambers may be securely attached with ease and speed, and which device also has a conveniently positioned exhaust valve. It is further stated that the invention when in use will not interfere with the user's vision; that it is foldable, compact, well-balanced, light and easily put on, so that it is practically impossible to apply it incorrectly.

The preferred construction comprises a main shielding body, integrally molded, and has a hollow interior and a wedge-like exterior appearance. The body may be pro-

| 1 | No. | Application | Issue | Claims |
|---|---|---|---|---|
| | 2,000,064 | March 27, 1933 | May 7, 1935 | 12, 14 |
| | 2,105,183 | Nov. 19, 1934 | Jan. 11, 1938 | 1, 2, 3, |
| | 2,106,795 | Apr. 27, 1934 | Feb. 1, 1938 | 4 |
| | 2,112,270 | Apr. 27, 1934 | March 29, 1938 | 1, 2, 3, |
| | 2,120,230 | Aug. 10, 1933 | June 14, 1938 | 2, 3 |
| | 2,120,231 | Dec. 26, 1935 | June 14, 1938 | 1, 2, 3, |

vided at its rear edge with cutouts for the accommodation of the bridge of the nose. These cutouts being identical, the device may be reversibly used, that is to say, upside down.

Centrally and toward the front of the device may be a flutter valve, which may be formed of two lips, preferably formed integrally with the body and adapted normally to remain in closed position. These lips may be formed of the same kind and thickness of rubber as the body, and resemble in cross-section the appearance of a duck's bill, with the extreme forward ends in contact, and their rear edges spaced apart to some extent. Interiorly the device preferably provides a pair of integral rubber bosses adjacent the rearmost portions of the lips, centrally and substantially · vertically of them. Since each boss is similarly placed on its lip, the two bosses will contact and cause the lips to remain separated at the point of contact. Thus there is a large air passage provided around the bosses which continues forwardly, diminishing in size, until it is entirely closed by the forward meeting edges of the lips. The bosses serve as fulcrums, so that as the face portion is spread to apply to the face, the valve lips are pressed more firmly together to ensure proper closing of the valve.

The side walls of the body may be extended so as to provide filter-retaining chambers having end walls provided with apertures. The side walls of extending filter chambers may be provided with integral extending bosses, which may be of appropriate size and height to engage apertures of an extension cap which may be made of relatively stiff material, as aluminum, and have a large opening in its outer end wall. A screen may be inserted in the extension cap, retained by a flange, thus covering the opening in the outer end wall of the cap. Hence the space between the end walls of the retaining chambers and the screen provides a space in which suitable air filter material may be placed.

Adjacent the inner ends of the walls of the filter chambers may be provided suitable flanges, formed by extending the side walls of the body across the inner opening of the filter chambers. The side walls of the body carry large apertures through which filter material is inserted into the filter chambers and retained therein by flanges. Preferably the body, filter chambers, valve, bosses and flanges are one integral piece of rubber. The lips may be properly molded by old methods so as to separate the rubber and provide a passage for air at the outer end of the lips. Adjacent the rear edges of the side walls of the body there may be secured fastening devices or bolts to which head straps are to be attached.

Appropriate filler material is put in the filter chambers, and if more is desired it is placed in the extension caps. These caps are pushed into the chambers in such manner as to line up the bosses with the apertures thereby retaining the caps in proper position. The resiliency of the rubber will cause the bosses to be pushed outwardly through the apertures thereby securing the engagement of the caps.

The respirator is secured to the face by placing one of the cutouts on the bridge of the nose and applying the head straps. When the user inhales, air is drawn inwardly through the filter chambers, and also through the filter caps if used. At such times the lips of the flutter valve are closed, but exhalation causes them to open until exhalation ceases. The vertical arrangement of the opening of the flutter valve, and the valve lips, which are a continuation of the converging walls, causes no appreciable interference with the user's vision, and directs the condensed moisture downwardly to the bottom of the opening, thus preventing a clogging of the valve throughout its entire length. Exhausted filtering material may be replaced quite easily with new.

The disclosure is referred to as the flutter valve patent. The two claims relied upon were held not infringed and that ruling is not questioned here.

Patent No. 83 is described as broadly relating to patent No. 64, and other copending applications of Cover. It relates to valves generally, including exhaust valves for respirators. Its principal object is to provide such valve with a movable sensitive element, easily removable and replaceable by inexperienced persons, whereby a maximum efficiency in opening and closing the valve is obtained.

The principle disclosed applies to a bulbous extension of an integrally formed respirator. The extension is of greater length than width, and preferably provided with an opening in each end, and a bead and lugs for retaining the valve. The valve arrangement includes an oval valve

carrying frame, comprising an annular flange and a concave base plate, which in turn is provided with a pair of spaced exhaust openings.

The carrying frame is also provided with a pair of centrally secured stud pins having heads and reduced portions, which act as hinges for the movable valve element. This movable valve element is made of thin, flexible and resilient rubber and substantially covers the base plate, and is provided with a pair of apertures adapted to register with the stud pins. These apertures are smaller than any portion of the stud pins, so that the aperture-forming walls seat in a conelike manner about the reduced portions of the pins, thus forming pockets between the portions of the flap resting on the base plate, so that when the movable element is placed in position the aperture-forming walls will be under tension and force the valve to lie snugly upon the base plate, within the flange.

It is obvious that the new feature claimed[2] for this patent is the provision of holes in the valve element smaller in diameter than the pins, so that the valve element is distorted adjacent the pins and is thus maintained in a concave condition, which it is said will cause the valve to seat better.

█ The District Court held that none of these claims was infringed by defendant's structure, and we think the evidence fairly supports that conclusion. In that structure the pin is approximately the same size in diameter as the opening in the valve element, and there is no material stretching of the valve element. Moreover, defendant has made its valves the same way since during the year 1933, and is further justified in so doing by the disclosure of the Willson Company respirator described in a printed publication on January 3, 1933.

█ Patent No. 95 relates more particularly to a face cloth to be used with a respirator. In describing it, Cover stated that he was the first to evolve a conception of securing means whereby such cloth could be removably secured to the respirator. He discloses lugs molded into the top and bottom of the respirator body, and he provides diametrically opposed loops on the face of the cloth which can be hooked on to the lugs speedily and effectively, thus securing it and maintaining it in the desired position on the respirator.

In the District Court, Cover announced that he would rely only on claim 4. That claim, in substance, discloses a piece of cloth, frusto-conical in shape and provided with loops adapted to engage lugs molded on the face piece of the respirator to hold the cloth in place. Face cloths were quite old in the art, as was the molding of lugs integrally on a rubber body. It was quite necessary for the cloth to be frusto-conical in shape if it covered the periphery of the body. What Cover disclosed in this claim, either singly or in combination, did not rise to the dignity of invention and the District Court properly so held.

Patent No. 70 relates broadly to respirators, and the claims here involved refer particularly to the integral bulbous valve housing. Claims 1, 2 and 3 were relied upon. The court held claim 1 valid and infringed and it held claims 2 and 3 not infringed.

Claim 1 discloses a respirator comprising a forwardly tapering main body portion formed of flexible material, and a bulbous chamber formed integrally therewith at its forward end, there being a constricted passageway formed between the body portion and said chamber, the flexible walls of the bulbous chamber adjacent said passageway being formed to provide a valve frame seat, a valve frame and valve, and means for retaining the valve frame on the seat, the valve frame and valve being removable by flexing the walls of the chamber and passing the valve frame and valve through the constricted passageway. The distinguishing feature of the second and third claims from the first is that in the former the bulbous chamber is described as being vertically elongated and arranged with its major axis vertical and having an exhaust opening at each end. The questions here presented relate to the integral bulbous valve housing.

█ Cover has assigned error as to the court's ruling on claims 2 and 3, and the defendant has assigned error in cause

---

[2] Claim 1 (typical of 2 and 3). In a valve, a concave plate forming a valve seat provided with an aperture, a movable flexible valve element adapted to open and close upon said aperture, and means for holding said movable element in operative relation to said plate and providing sole means for distorting the adjacent portion of said valve element to maintain the same in concave condition.

No. 7037 as to the court's ruling on claim 1. It is not denied that in defendant's accused structure the bulbous chamber is not vertically elongated, and in this respect Cover admits that claims 2 and 3 do not read on the accused device, but he argues that defendant's construction is a mere variation of form and not of substance. However, this distinction constitutes the only material difference between claims 2 and 3 on the one hand and claim 1 on the other. If we construe this difference as a mere variation of form, it would amount to a holding that the scope of all three claims was the same. This we think should not be done. Scaife & Sons Co. v. Falls City Woolen Mills, 6 Cir., 209 F. 210. This is especially true when, as here, the reason is apparent why the distinction was made by Cover. It will be recalled that at least some of his products were supposed to be reversible, and in such event his elongated structure was a part of the essence of his invention. The defendant has never claimed to make a reversible structure, and without it the elongated bulb is quite unnecessary. We are compelled, therefore, to hold that claims 2 and 3 cannot be extended by eliminating the elongation feature, and we think the District Court properly held that defendant's structure did not infringe these two claims.

It is contended by the defendant that the court erred in holding claim 1 valid and it relies on patent No. 1,359,073 to King, and patent No. 2,038,267 to Bullard. It is not contended that either of these patents discloses all of the elements of claim 1, and of course, they cannot be read together as a combination for the purpose of defeating the claim now before us, and we do not think the defendant so contends. Its contention is, as we understand it, that the elements of each patent are to be found in this claim, and that by adding the Bullard cover cap to King's disclosure every element of claim 1 is present, and that it was not invention to place Bullard's cover cap on King's device. If the premises are sound the conclusion is quite logical. However, the examiner was of the opinion that the joining of the two constituted a true combination; the District Court was of the same opinion, and we think the evidence here disclosed does not warrant us in disturbing the presumption which attaches to those findings.

Patent No. 30 is defined as being a continuation, in part, of patent No. 64. Claim 2 of this patent discloses a wedge-shaped body portion formed of flexible material and having substantially flat plane-like side walls converging in a narrow end, a face entrance opening at the wide end of said body portion, air entrance openings in the side walls of said body portion, filtering material over said air entrance openings, means for holding said filtering material in place, said wedge-shaped body portion being foldable along a longitudinal median line intermediately between its side walls and through the narrow end of said wedge-shaped body portion.

Claim 3 is precisely the same as claim 2, except that it adds a flutter valve in the narrow end of the body, made of the same material as the body.

The District Court found that neither of these claims was infringed, and further found that claim 2 was invalid.

In his specification Cover states:

"Filter chambers have been attached to respirators before, but they have been attached by metal threaded rings or some equally expensive means. The respirator bodies have been made of rubber, but even when made of rubber a metal ring has been attached to the rubber body for the purpose of attaching the filter chambers. An object of my invention is to dispense with metal in the entire body of my device. * * *

"* * * The side walls of the body include cutouts at the rear top and bottom edges, and because of these the device is reversible, for each of the cutouts provides an opening for the entrance of the nose. * * *"

It is obvious that Cover stressed a reversible respirator and one in which there was no metal in the body portion. He built his filter pads into the side walls and provided a rubber extension on the side of the respirator, and within this extension he placed a plurality of openings. Within this extension he placed his filtering material, on top of which he placed a metallic screen secured by a ring. He stressed the fact that he had eliminated separate filter boxes having threaded rings to fasten them to the face piece, and he accomplished the result of locating the filtering material in the integral portion of the side walls. Furthermore, the claim calls for a plurality of air entrance openings in the side walls, and the filtering material is arranged over these openings.

In the defendant's device there is only one opening in each side wall, and the filtering material is arranged over this opening by the addition of filter boxes, one on each side, which are held in place by screw threaded collar members.

In the prosecution of his application, Cover plainly distinguished his disclosure from appellant's device. He said:

"* * * The combination of parts employed for attaching the filter caps is particularly useful for the following reasons: In the first place, there is no expensive operation of attaching a metal screw threaded collar to the resilient material body portion. In previous constructions it has been thought necessary to attach such a collar for the purpose of co-operating with the internal threads of a detachable cap. Applicant totally eliminates the attaching and threading operations and secures the caps very firmly in place by the boss or lug and slot arrangement."

We think it is clear that appellant's device does not infringe either of these claims.

The District Court held that claim 2 was anticipated by the prior use of Garnett. The Garnett device is a true wedge and has the same cutout openings at the top and at the bottom, hence it is reversible. It is foldable, and the side walls have the filtering material built into them. The filter attaching means are not screw-threaded, and so far as we can observe it has all the material features of construction which are claimed by Cover. Cover, however, attempts to differentiate his device from that of Garnett, in that the former is for dust and the latter is for smoke. However, in the prosecution of his patent, he stressed the use of his disclosure for protecting the lungs of firemen and others subjected to the smoke and fumes of burning material. Moreover, the application for this patent is a continuation in part of patent No. 64 which has for its object the protection of "the user from dust, smoke and noxious gases of various kinds." This indeed would at least indicate that both were in analogous fields of art and we are convinced that Garnett strongly indicated, if he did not exactly produce, everything which Cover disclosed.

The court's ruling with respect to claims 1, 2 and 3 of patent No. 31 is challenged by the defendant in cause 7037. Claim 1 discloses a respirator body portion and a removable filter box mounted eccentrically of the filter box on the side of the body portion and adjustable about the mounting. Claim 2 is the same as claim 1, except that it adds an exhaust valve and discloses a plurality of removable filter boxes. Claim 3 discloses a body portion provided with an exhaust valve and a removable and adjustable filter element, and means for securing the filter element to the body by means of an open flanged cap and a locking ring adapted to thread on the cap.

The defendant argues that these claims do not involve invention over the prior art, and it relies principally on United States Patent No. 2,019,928, to Punton, plus Browne and Wallace Patent No. 1,109,318, and/or Curran No. 172,094. None of these patents discloses all the elements of any of these claims, and they cannot be combined for that purpose, and we are not convinced that a combination of all the elements disclosed by the cited patents constituted nothing more than mechanical skill. The Punton patent was considered by the patent office in the prosecution of Cover's claims, and it was found by the examiner that the claims involved invention over Punton. The District Court was of the same opinion and it also considered the three prior art patents relied on by the defendant. The evidence in this case is not sufficient to overcome the presumptions which attach to those rulings. Moreover, the record discloses that the defendant, in the face of all the prior art relied upon, filed an application for a patent on practically the same device which is covered by the patent in suit. We discover no error in the court's ruling as to the validity of these three claims.

We think it is obvious that these claims are infringed by the defendant's device. The claims unquestionably read upon it, and defendant's letter of June 10, 1938, admits that the devices are practically the same.

The decree is affirmed.