**GAGNIER FIBRE PRODUCTS CO. v. FOURSLIDES, Inc.**

No. 10876.

United States District Court
E. D. Michigan, S. D.

June 10, 1953.

Connolly, Moynihan & Connolly, Detroit, Mich., and Strauch, Nolan & Diggins, Washington, D. C., for plaintiff.

Dahlberg, Simon, Jayne, Woolfenden & Gawne and Elmer Jamison Gray, Detroit, Mich., for defendant.

PICARD, District Judge.

This action involves two patents, 2,057,587 and 2,057,588, hereinafter referred to as "587" and "588." They relate primarily to hook fasteners used in connection with the attaching of fiber boards to the interior of an all metal automobile body to which boards the interior cloth is or has been attached.

Plaintiff alleges infringement of claims 4, 7 and 8 of 587 and claim 5 of 588. Both are combination patents. Defendant admits infringement of two claims of 587 and the court found infringement on the third as a matter of fact. Defendant alleges, however, that both patents, 587 and 588, are void for want of invention, unpatentable combination and anticipation by the prior art. As to 588, a combination patent directed to the position of holes in both board and structure and the affixing of said board to the structure by hook fasteners, defendant adds to its defense by denial that it ever at any time was guilty of contributory infringement.

### Statement of Facts

About the beginning of the industry in 1907 when bodies were of wood and steel, buckram was usually the material used in the interior of automobiles over which some strong cloth was attached. But in 1917, at the insistance of plaintiff which had been active in the development of this phase of the interior finish, the industry switched from buckram to fiber doing away with the costly leather laminations.

All steel bodies used first in 1921, proving a more complex problem, necessitated experimentation with various fasteners to attach the fiber board to the metal body as a base for the interior finish. None

of them was satisfactory however until 1928 one, Place, employed by plaintiff, invented the Place fastener, 1,679,266, which became an instant success used by many manufacturers of automobiles. However, after about two years of experience, it was found that many fiber boards which had been previously delivered to automobile manufacturers very often became warped while in storage and when it came time to attach these boards to the steel body of the car's interior, it was learned that the holes of the fiber board were out of line with the receiving holes of the steel structure, with the result that many troubles developed for which a remedy was sought. Among these were the rattles where the alignment had been off which increased with the use of the car, expensive repairs and the sometimes total discarding of the prepared panels.

In 1930 plaintiff's Place made his improvement—587—the main feature of which is the change in the head of 266 so that it is U shaped and when attached to the fiber board may be made to adapt itself to any shrinkage in the fiber board that might have caused the holes to get out of line from their opposite affinities. The new feature was adopted by the trade (except General Motors), Ford coming to it in 1936.

From here on the facts are in dispute.

According to plaintiff, defendant in 1947 appealed to it for some work to help defendant keep its new company going, suggesting that it might make some of plaintiff's hook fasteners. Plaintiff gave defendant an order and furnished the necessary blueprints. From 1947 to 1950 defendant made approximately sixty million fasteners for plaintiff who sold them to the automobile companies. But defendant, becoming dissatisfied, started making infringing fasteners on its own and has now taken a great deal of plaintiff's business.

On the other hand, defendant pictures plaintiff as approaching it, a new company, and driving a hard bargain by securing defendant to make plaintiff's fasteners at less price than it was paying to its other supplier, L. A. Young Spring & Wire Company, and obliging defendant to incur expense that it would never be able to meet out of the small profits.

■ The equities appear to favor plaintiff but whether this is true or not is immaterial in determining the issues in this case.

The main question is whether 587 or 588 or both present a patentable invention within the meaning of the statute law and decisions of our courts. Patent 587, like 266, is a small single wire fastener with a prong or shank formed by its opposite two ends converging at the bottom and diverging at the top as a socket for engaging purposes. The shank is about ¾ of an inch long, the rest of the wire being shaped into a hook fastener. The diverging part of the wire is about ½ an inch wide and the head is U shaped adding a little over ⅛ inch to the length of the fastener. The U shaped head is about ¼ inch wide and ½ inch in length. The head is inserted into the aperture in the trim panel, and the shank, which is now in a position perpendicular to the panel and structure, is snapped into the aperture in the steel structure. While plaintiff claims that the fastener works automatically with mutual coaction between the prong and the head, the fact is that the fastener must be manipulated by hand into making the connection between the fiber board hole and the hole in the structure and where there is not the proper alignment between the two, as intended, from shrinkage or any other defect, then the fastener may be "adapted", the "adapting" feature being chiefly the reason why 587 was necessary. The only difference between 266 and 587 is admittedly in the head.

### Conclusions of Law

We will attempt to determine the questions in order and the first is whether the new statute passed by Congress in 1952 and effective January 1, 1953, Public Law 593, 82nd Congress, 2nd Session, Chapter 950, 66 Stat. 792, 35 U.S.C.A. § 1 et seq., governs the issues in this case and if so, to what effect?

■ While we believe that it was not the intent of Congress to make this act entirely retroactive, not favored in the eyes

of the law, U. S. Fidelity & Guaranty Co. v. U. S. for Use and Benefit of Struthers Wells Co., 209 U.S. 306, 28 S.Ct. 537, 52 L.Ed. 804; Winfree v. Northern Pacific Ry. Co., 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518, there is a recent decision, specifically holding that the new act is not to be so considered. General Motors Corporation v. Estate Stove Company, 6 Cir., 203 F.2d 912, decided April 17, 1953. The instant case was heard before the 1952 act went into effect and decision was delayed only because of the filing of briefs.

But it is our further opinion that even though the act were retroactive, as plaintiff seems to believe, relying on Section 4(a) thereof, 35 U.S.C.A. note preceding section 1, the changes in that act do not affect the questions herein.

■ For example let us examine those changes referred to by plaintiff.

Section 103 of the new act provides among other things that

"A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

That has been case law in the United States for years. Ranco, Inc., v. Gwynn, 6 Cir., 128 F.2d 437; Standard Brands v. National Grain Yeast Corp., 308 U.S. 34, 60 S.Ct. 27, 84 L.Ed. 17; In re Zabel, 186 F.2d 735, 38 C.C.P.A., Patents, 832; Application of Lifton, 189 F.2d 261, 38 C.C.P.A., Patents, 1119.

In fact this section, 103, of the new act merely stabilized or gave statutory effect to what had been well recognized case law.

■ Attention is also directed to this clause in Section 103:

"Patentability shall not be negatived by the manner in which the invention was made."

This, we must admit is new, because in a Senate report that clause is clarified and it does change some phases of case law. As stated in the report this particular wording was used to provide the Patent Examiners and the Courts with a yardstick that in considering the patentability of any article from January 1, 1953 on, it would be immaterial whether the invention

"resulted from long toil and experimentation or from a flash of genius."

This wording officially not only rejects the "flash of genius" test of Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58, which this court necessarily followed in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, but it goes farther. Today one may have a patent if he just "stumbled" upon his invention or it might even have been the result of an accident. But the "flash of genius" is not claimed in this case.

■ Then the new patent law provides in Section 282:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

Here again we find that this was the case law long before the new act was written and merely put into statutory form what the courts had long been holding. Radio Corp. v. Radio Engineering Laboratories, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163; Pattinson v. Marzall, D.C., 100 F.Supp. 787; Cover v. Chicago Eye Shield Co., 7 Cir., 111 F.2d 854.

### Validity of Patents

■ Having determined that it is immaterial whether the old law or the new law is followed but having also held that if it does become important the new law does not apply, we pass to the second question, namely, defendant's claim that both patents are invalid for want of invention, unpatentable combination and anticipation in the prior art.

### As To 587

Admittedly the improvement of 587 over 266 lies in the head because the spring

shank or prong portion thereof is identical with 266. But in 266 a planar head is centered on the shank necessitating the holes of the structure and the panel to be in perfect alignment, while the head of 587, as described, comprises two parallel jaws connected at one end by a bight in the shape of the letter U, projecting away from the shank so that the bight of the hook and the spring socket engaging shank are off-set from each other.

Since the shank (266) is old, then is the new head in 587 something new? We think not. The Walters patent (1924) No. 1,760,259 (reissue No. 17,823) disclosed a U shaped clip or hook made from sheet metal. In fact the Walters patent specifically covered the adjusted or shifting feature of its head as follows:

"If for any reason any of the sockets do not register with the studs when the upholstered part is being secured to the door, the studs may be shifted transversely relative to the frame until they do register with the eyelets 8 which are then pressed into engagement therewith.".

The Walters patent was discussed by the Examiner when considering 588 but the facts show that the Examiner did not necessarily have the Walters patent before him in 587 because 587 was granted sometime before 588 or at least before 588 was considered by him.

■ Other prior art patents—Putnam, 36,933, Hall, 628,660, and King, 1,053,041 —were hook fasteners admittedly designed for garments or apparel of some sort and all having a similar "adaptable" head. Of course they probably could not be efficiently used for the same purpose as 587 but it must be remembered that plaintiff claims that 587 is a fastener "per se." There is nothing in 587 that limits the use of its hook fastener. In the end, therefore, you have a fastener (587) composed of a prong or shank taken from 266 and a head taken from any one of three patents in the prior art, two of which were not cited by the Examiner and under many decisions any patent in the prior art not cited by the Examiner raises no presumption of the validity of the patent before the court over those patents. Kawneer Company v. Pittsburgh Plate Glass Co., D.C.W.D.Mich., S. Div., 109 F.Supp. 228, decided December 30, 1952; citing among others O'Leary v. Liggett Drug Co., 6 Cir., 150 F.2d 656. See also Industrial Models Corp. v. Loeffler, D.C., 67 F.Supp. 690, 694, and Reynolds v. Emaus, D.C.W.D.Mich.S.D., 87 F. Supp. 451.

Patent 587 being part Place 266 and Walters 259 the question then presents itself as to whether we have here a combination of two elements of the prior art or an aggregation. This has been the turning point of several cases—among them the Great Atlantic & Pacific Tea Co., supra. Examining, therefore, the functioning parts of the two elements we find that the Walters fastener could be used to attach a fiber panel to the steel structure of a door and the head slipped over the rim of the panel in the same manner as 587 fits into the aperture of the fiber board. It was not done automatically in Walters any more than it is done automatically in 587. You have to adjust the head in order for the prong to find the hole. Of course 587 is a much better fastener than the Walters patent for the purpose intended so it is not surprising that 587 "caught on" and enjoyed greater commercial success than any other patent for that purpose.

■ But "commercial success without invention will not make patentability", Great Atlantic & Pacific Tea Co., supra [340 U.S. 147, 71 S.Ct. 130]; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973. The idea to combine the head of the Walters patent with 266 might have been ingenious but it is not necessarily "invention." The prong of the hook fastener does one thing. Then the head does its job. Neither qualifies the other and the result is merely the adding together of each separate combination. There is no additional or different function in the combination than the elements perform out of it. Great Atlantic & Pacific Tea Co., supra. See Pickering v. McCullough, 104

U.S. 310, 317, 318, 36 L.Ed. 749, where the court said:

"But the results must be a product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result obtained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect, without the production of something novel, is not invention." Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008; Lempco Products Inc., v. Simmons, 6 Cir., 140 F.2d 58, 60, 61; General Motors Corp. v. Estate Stove Co., 6 Cir., 201 F.2d 645; and Ranco, Inc., v. Gwynn, 6 Cir., 128 F.2d 437, 442.

█ Since 587 is an aggregation with no new or different function or operation performed or produced by the separate elements, it must necessarily follow that there is no invention.

### Improvement Was Obvious

May we not add this further thought that the improvement of 266 by 587 would undoubtedly have been obvious at the time to a person having ordinary skill in the art to which the subject matter pertains.

266 was issued in 1928 and was used by the trade. It's a well known fact that so-called "bugs" in new automobiles appear generally after use on the road. All "bugs" are eliminated before the car reaches the general public if possible but in this case less than two years after the deficiencies of 266 as a fastener were apparent the remedy for those deficiencies was discovered. In the much discussed Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp. case, supra, decided by this court, the merchandising world, centered not in a few cities but throughout the whole United States, sought for twenty years a solution to its many checking out problems in serve-self stores before some one brought forth the bottomless tray counter. In fact we find nothing in the Supreme Court's decision in that case to indicate that the bottomless tray did not meet all the tests of invention then known except that in the opinion of the court the parts or elements of the alleged invention did not complete a new or different function or operation. The bottomless tray was novel, useful, enjoyed a commercial success even greater than the subject matter of the case at bar, and we thought came into existence by the "flash of genius" to fill a need the industry had been seeking for years. But it couldn't meet the test set forth in that opinion, 340 U.S. at page 152, 71 S.Ct. at page 130:

"A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men."

(which plaintiff in its brief states could be met by only a few combination patents) nor this test, 340 U.S. at page 152, 71 S. Ct. at page 130:

"The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable."

In our opinion it must have been evident to anyone having ordinary skill in the art of hook fasteners that there had to be some play allowance for shrinkage or defects in manufacture, if fiber board and steel body were to remain in close relationship.

For that added reason we hold that 587 is not a patentable invention.

### As To 588

This patent discloses a combination of—

1. A metal support structure having a fastener stud receiving aperture,

2. A trim panel having an aperture located at a greater distance from the edge than the aperture in the support structure, and

3. A snap fastener having a yieldable portion entered into the aperture in the support structure and an attaching portion

passing through the aperture in the trim panel.

Defendant denies that when it sold its fastener to the Briggs Corporation that it was guilty of contributory infringement.

Plaintiff quotes Section 271(c) of the new Patent Act—

"Whoever sells a component of a patented machine, * * * constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

The Briggs Company makes automobile bodies. Both plaintiff and defendant knew this and defendant knew or should have known that the 587 fastener was made or "especially adapted for use" to which it was put. While plaintiff's proof on contributory infringement was somewhat lacking, Motion Picture Patents Co. v. Universal Film Mfg. Co., 243 U.S. 502, 37 S. Ct. 416, 61 L.Ed. 871; Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Mercoid Corp. v. Minneapolis-Honey-Well Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L. Ed. 396, if the question of defendant knowing what the fasteners were to be used for were the only question on contributory infringement we would hold with plaintiff. However, it is not. In view of our decision that 587 is an aggregation and not a combination or if a combination does not produce any new or different function, we must here consider it as an unpatented article and since the new patent law was enacted with the specific purposes of stabilizing and clarifying much of patent case law we can but agree with its conclusion that one who uses a staple article or commodity of commerce suitable for noninfringing use is not a contributory infringer. 587 is a hook fastener per se, a staple article, suitable for noninfringing use and is not a valid patent.

And 588 as a patent is, in our opinion, not valid for another reason. It is to be observed that the third element of the 588 combination, above stated, does not contemplate the use of any particular fastener. While 587 falls within the description set forth in the claim, the claim does not specify nor describe the 587 fastener per se. Any fastener having an attaching portion and a yieldable portion may be used and will satisfy this combination.

But assuming that 587 is valid and that 588 must be given independent consideration, the claimed structure of a panel, support, and fastener enumerated in 588 was old in the Place 1,722,944 patent. The difference on which patentability depends is that the apertures in the trim panel of the 588 patent are offset from the apertures in the support structure, whereas in the 944 combination it was essential that the holes be aligned.

The court fails to appreciate the novelty of this purported invention. It is inherent in the use of all hook fasteners. In fact, it is difficult to conceive how a hook fastener of any description could be used if the holes in the support and panel structures were aligned. The concept is old. The Walters patent taught it.

Of the prior art, Walters in particular cannot operate in any other way than does the 587 hook fastener when following the method provided in 588, whether the holes in the fiber board are near or far away from the edge.

Therefore on the further theory of prior art alone we would hold patent 588 invalid.

A judgment in accordance with this opinion may be submitted for our signature.