DESIGN, INCORPORATED

v.

The **EMERSON COMPANY.**

Civ. A. No. 68–H–39.

United States District Court,
S. D. Texas,
Houston Division.

Oct. 7, 1970.

John Teed, Houston, Tex., for plaintiff.

M. H. Gay, Vinson, Elkins, Searls & Connally, Houston, Tex., for defendant.

*Memorandum and Order:*

SINGLETON, District Judge.

This suit concerns the infringement and validity of a design patent assigned to plaintiff. Jurisdiction is present under 28 U.S.C. § 1338(a). Venue is also present under 28 U.S.C. § 1400(b).

Plaintiff, Design, Incorporated, is a Texas corporation, with offices in San Antonio, Texas. Defendant, The Emerson Company, is a corporation with a regular and established place of business in Houston, Texas. The patent in question, U. S. Letters Patent No. DES. 201,224, was issued to Alfred A. Schroed-

er on May 25, 1965. Prior to its issuance, the patent was assigned to plaintiff and that assignment was recorded with the United States Patent Office.

The subject of the Schroeder patent is an insulated beverage container and carrier. The container is manufactured by injecting air and a plastic-like compound into a metal mold and then cooling the mold and its contents to form the container. The end product is a generally rectangular box with a removable lid. The edges and corners of the box are rounded. A rope, which functions as a combined hinge and carrying handle, extends upwardly from the base and through the top. When the top is removed, there are revealed in the base six circular holes, each about three inches in diameter, which hold canned or bottled drinks. At the upper end of these holes are a series of semicircular slots which permit the grasping of cans fully contained within the holes. Extending around the upper part of the base is a ledge, which mates with a lip extending around the top to hold the top in place. The top has a mating frustrualconical recess overlying each of the holes in the base to receive the bottle tops which protrude above the base.[1]

Schroeder's patent application was originally rejected by the patent examiner as being unpatentable over Graves No. 2,465,644, Yusz, No. 2,944,695, and Hunter, No. 2,961,124. Schroeder then amended his application urging a reconsideration of the rejection. The amended application, which was considered by a different patent examiner, was subsequently approved.

Until a fire destroyed plaintiff's plant in January, 1965, plaintiff's primary, if not exclusive customer was the Lone Star Brewing Company. After the fire, defendant seized the container mold as partial satisfaction for a debt owed by plaintiff to defendant. Thereafter, Lone Star approached defendant who began manufacturing its product for Lone Star.

After defendant began selling to Lone Star, plaintiff notified defendant of the existence of the patent. When plaintiff received a negative response to its demands that defendant cease manufacture, plaintiff brought the present suit. Plaintiff seeks injunctive relief against further manufacture and sales, treble damages under 35 U.S.C. § 284, attorneys' fees, and costs of litigation. Defendant denies both validity and infringement and counterclaims for declaratory relief. A trial on the merits was held on March 3, 1970.

■ The statutory authority for the granting of design patents is 35 U.S.C. § 171 which provides:

"Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

"The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."

The statute is concerned with the appearance of the design, the appeal to the eye. It is the general effect of the design, its appearance as a whole that is controlling, or, to put it differently, a design is to be tested by the overall aesthetic effect, and this general effect is that which is produced on the eyes of the average or ordinary person or observer as opposed to the expert. See 2 Deller's Walker on Patents, sec. 158, pp. 734–36 (2d ed.). In order for a design patent to be valid, it must be: (1) new, (2) original, (3) ornamental, (4) non-obvious to a person of ordinary skill in the art, and (5) not primarily for the purpose of serving a functional or utilitarian purpose. Barofsky v. General Electric Corp., 396 F.2d 340 (9th Cir. 1968).

---

1. Since words do not permit a completely accurate visualization of the beverage container, an illustrated copy of the Schroeder patent has been appended to this opinion.

As for the first requirement, newness, defendant contends that the Schroeder patent was anticipated by the prior art. From the evidence submitted at trial, it appears that defendant's primary reliance is on 35 U.S.C. § 102(b).[2] Specifically, defendant urges that the specifications within the Schroeder patent were patented more than one year prior to Schroeder's second application which has a filing date of April 28, 1964.[3] The prior art references which bear the closest resemblance to the claims of the Schroeder patent are three patents by Szantay, each dated February 19, 1963—DES. Nos. 194,637; 194,638; and 194,639. To constitute an anticipation, a prior art reference, whether a patent or other publication, must disclose the invention in such full, clear, and exact terms as to enable any person skilled in the art to which the invention relates to practice it. Monsanto Company v. Dawson Chemical Co., 312 F. Supp. 452 (S.D.Tex.1970). None of these patents meet that test.[4] Each is significantly different from Schroeder in several respects. The two Szantay patents that did reveal the insides of the box showed one large hole instead of six smaller ones designed to hold individual cans or bottles. Neither the handles nor the tops of the Szantay and the Schroeder boxes are the same. The top of the Schroeder box has a singularly rounded edge and corners, while the box tops in the Szantay patents have multiple rounded edges and corners. The Schroeder box is flat on the bottom and top, but the Szantay boxes have ornamentation on bottom and top. There is nothing in Szantay comparable to the finger slots in Schroeder. Thus, it must be concluded that the Schroeder patent is not anticipated by the prior art.

Originality is the second of the criteria for a valid design patent. No evidence has been presented on this point. Since, however, the patent itself is presumed valid, Monsanto Company v. Dawson Chemical Co., *supra*, that requirement will similarly be presumed to have been met. Schroeder must have convinced the patent examiner that the beverage cooler was his idea or the patent would not have been issued.

The third requirement for a valid design patent is that it must be ornamental. Whether a design is ornamental or not depends on whether it appeals to the eyes as a thing of beauty. See Bentley v. Sunset House Distributing Corp., 359 F.2d 140 (9th Cir. 1966). It must be the product of aesthetic skill and artistic conception. Blisscraft of Hollywood v. United Plastics Company, 294 F. 2d 694 (2nd Cir. 1961). There is a difference in the meaning of the terms "artistic" and "aesthetic." The former stresses the point of view of one who produces art and thinks in terms of creating beauty or form; the latter stresses the point of view of one who analyzes and reflects upon the effect of a work of art. Either term may suggest a contrast with the practical, functional, or moral aspects of something. Webster's New Collegiate Dictionary, page 50, 7th ed. (1965).

2. Section 102(b): A person shall be entitled to a patent unless the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

3. Schroeder's first application is dated August 20, 1962. At the patent examiner's insistence, Schroeder amended his second application so as to abandon the first. No contention is made that he is entitled to the earlier filing date.

4. There were copies of certain other patents which were admitted into evidence as being anticipatory. To avoid an unnecessary lengthening of his opinion, it is sufficient so say that none of them comes anywhere close to anticipating the claims of the Schroeder patent. These patents include Hunter, No. 2,961,124; Graves, No. 2,465,644; Yusz, No. 2,944,695; Rood, No. 1,662,399; Weiner, No. 2,123,-031; Acton, No. DES. 149,034; Jones, No. DES. 162,548; Shank, No. DES. 148,488; Worthington, No. DES. 98,200.

In Blisscraft of Hollywood v. United Plastics Company, *supra*, there was at issue a design patent on a polyethelene pitcher. It was held:

> "Plaintiff's pitcher has no particularly aesthetic appeal in line, form, color, or otherwise. It contained no dominant artistic motif either in detail or in its overall conception. Its lid, body, handle and base retain merely their individual characteristics when used in conjunction with each other without producing any combined artistic effect. The reaction which the pitcher inspires is simply that of the usual, useful and not unattractive piece of kitchen ware. The design fails to meet the ornamental prerequisite of the statute." (294 F. 2d 696)

Much of the same can be said concerning the Schroeder patent. The primary feature which is most striking to the casual observer is its featurelessness. Although it is not an object which is displeasing to the eye, it is far from what could be considered a thing of beauty. There is nothing either artistic or aesthetic about it. One who sees it does not take delight in its creation. It is an item which is more likely to be stored in a kitchen closet rather than on display in one's living room. The design embodied in the Schroeder patent is, therefore, not ornamental.

■ The fourth condition which must be present for a valid design patent is that it must be non-obvious to a person of ordinary skill in the art. The obviousness concept has its origin in 35 U.S.C. § 103, which provides:

> "A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

The purpose of the second sentence of section 103 is to render it immaterial whether the invention resulted from long toil and experimentation or an accidental discovery. Gagnier Fibre Products Co. v. Fourslides, Inc., 112 F.Supp. 926 (E.D.Mich.1953). Obviousness within section 103 goes to the question of whether there is a patentable invention. In determining obviousness, it is necessary to consider the prior art as a whole. Monsanto Company v. Dawson Chemical Co., *supra*. Under section 103 the scope and content of the prior art are to be determined, the differences between the prior art and the claims at issue ascertained, and the level of ordinary skill in the pertinent art resolved. See Rains v. Niaqua, Inc., 406 F.2d 275 (2nd Cir. 1969), citing Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). There must be more than mere mechanical skill and the completed article must rise above the ordinary. Jaybee Manufacturing Corp. v. Ajax Hardware Mfg. Corp., 287 F.2d 228 (9th Cir. 1961).

With respect to obviousness in the Schroeder patent, the prior art includes the Szantay patents, which have been previously discussed. Mention should also be made of patents by D. P. Yusz, No. 2,944,695, for a bottle container and G.M. Acton, No. DES 149,034, for a bottle carrier. The Yusz patent partially consists of a top with a flat surface and beveled edges. It fits on a bottle carrying base. As is true of the Schroeder patent, the underside of the top is recessed to allow it to fit over the bottles in the base. The Acton patent is significant in that it is a bottle carrier with singularly rounded edges and corners.

■ From what has been said, it is clear that the Schroeder patent is obvious and is not an invention. The outside of the beverage cooler at issue can be substantially re-created by simply eliminating the protrusions from the base bottoms in the Szantay patents, adding to that the top in Yusz, and rounding the corners and edges as shown in Acton.

There is no novelty in rounded corners and edges. Acton Mfg. Co. v. Louisville Tin and Stove Co., 116 F.Supp. 796 (W.D.Ky.1953). In that case the court held invalid design patent[5] on a portable beverage cooler:

> "The witnesses for the plaintiff place much emphasis on the rounded and curved corners and the corner guards secured to the side and end walls. There is nothing particularly novel in this construction, but it is a tendency of mechanisms of all utility items to soften what would now be considered the harshness of sharp corners and edges. It is not design invention to bring about such changes that are obvious to persons skilled in the art. This same designing is utilized in hundreds of items from automobiles to cooking utensils." (116 F.Supp. 798)

As for the insides of the base of the Schroeder patent, there is nothing creative about separating six overlapping circular holes to form six individual circular holes.

The Schroeder patent is not, therefore, an improvement in the level of the art as it was when Schroeder applied for the patent. What he did was simply to recombine a number of well-known design features, a feat which, without creative talent, does not bring about an invention. It is not sufficient that Schroeder has shown the talent of an adapter; a manifestation of the art of the inventor is required. See Blisscraft of Hollywood v. United Plastics Company, *supra*.

Yet another requirement for a valid design patent is that its purpose should not be primarily functional or utilitarian. A design patent cannot properly be obtained on the shape of a device which necessarily results from its mechanical parts. Circle S Products Co. v. Powell Products, 174 F.2d 562 (7th Cir. 1949). The plaintiff argues, however, that its design patent is not rendered invalid merely because the article of manufacture which is the subject of the design may, in addition to having a pleasing appearance, also form a useful function. See Robert W. Brown, Inc. v. DeBell, 243 F.2d 200 (9th Cir. 1957); E. H. Sheldon & Co. v. Miller Office Supply Co., 188 F.Supp. 67 (S.D. Ohio, 1960). In *Barofsky, supra*, the court answered that argument in the following terms:

> "This is undoubtedly the law. See Robert W. Brown & Co., Inc. v. De-Bell, 9 Cir., 243 F.2d 200, 202–203. But, as we stated in Payne Metal Enterprises, Ltd. v. McPhee, 9 Cir., 382 F.2d 541, 546, the rule is otherwise if the primary purpose of the design is functional. The configuration and appearance of many articles of manufacture, though dictated by functional requirements, are often pleasing to look at. However, if the resulting configuration proceeds primarily from the necessity of functional or mechanical requirements, it is not a valid design patent. See Bentley v. Sunset House Distributing Corp., 9th Cir., 359 F.2d 140, 145; Bliss v. Gotham Industries, Inc., 9th Cir., 316 F.2d 848, 851.

> \*   \*   \*   \*   \*   \*

> "Barofsky argues, in effect, that even if some individual features of his design are primarily designed to serve a functional purpose, this is immaterial if the design, considered as a whole, is not functional. To predicate this functional test upon a consideration only of the individual features of the design, Barofsky contends, is 'to break the fagot stick by stick,' a process which Justice Holmes condemned in connection with a copyright infringement question. See [Joseph] Schlitz Brewing Co. v. Houston Ice & Brewing Co., 250 U.S. 28, 29, 39 S.Ct. 401, 63 L.Ed. 822.

> "The basic question here is whether the complete design for which a patent has been obtained primarily serves a utilitarian purpose. Consideration of that question necessarily

---

5. This is not the same Acton patent cited as a prior art reference in this case.

involves an analysis of the design as a whole. The only way to make such an analysis is to note the individual features and functions of the design, evaluate their relative importance, and observe how they each contribute to the over-all conception for which the patent has been issued. See Bentley, supra, 359 F.2d at 146.

"Proceeding in this manner, it would not be proper to invalidate a design because one or more minor features primarily serve a utilitarian purpose. But invalidation is indicated if the individual features which are found to serve, primarily, a functional purpose may fairly be labeled as dominant, in the sense that they are chiefly relied upon as contributing to the overall design the qualities of newness, originality, ornamentation and non-obviousness."

See also Day Brite Lighting, Inc. v. Compco Corp., 311 F.2d 26 (7th Cir. 1962). The individual features of the Schroeder patent are (1) rounded edges and corners, (2) six circular holes in the base with (3) semi-circular slots at the upper end of each, (4) six holes in the top corresponding with the six in the base, (5) a lip around the top of the base which mates with a recess in the top itself, and (6) a rope which passes through the top and the base. The six circular holes in the base are for the purpose of holding the cans and bottles. The semi-circular slots allow access to the cans. When bottles are put in the six circular holes, the corresponding holes in the top allow it to fit snugly over them. The lip holds the top in place. The rope serves a dual function of hinging the top with the base and acting as a carrying handle. The only features which serve no utilitarian purpose are the rounded edges and corners. It appears that the design within the Schroeder patent, when all of its features are considered together, is dictated not so much by an attempt to create, but by the functions these features serve. The Schroeder patent, therefore, which purports to claim a design, instead claims that which serves utilitarian functions.

It is, therefore, concluded that plaintiff is the assignee of an invalid patent. If, however, the patent were valid, it would be infringed by the accused device. The test for infringement of a design patent was stated in Gorham Mfg. Co. v. White, 14 Wall. 511, 81 U.S. 511, 20 L. Ed. 731 (1872):

"* * * [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." (14 Wall. 528, 81 U.S. 528)

There are only a few minor differences between the patented box and the accused box. First, the semi-circular slots in the plaintiff's product run the width of the box, while those of defendant's product run the length. Second, the rope hinging the base of the patented design is slightly longer, a difference which is not apparent until the lid of the box is removed. These differences are not sufficient to deter a lay observer from purchasing the accused design when he intends to purchase the patented design.

For the foregoing reasons it is ordered, adjudged, and decreed that the plaintiff's application for injunctive relief be, and the same is hereby, in all things, denied, and further it is ordered, adjudged, and decreed that the plaintiff take nothing from defendant regarding the damages plaintiff seeks to recover. The attorney for defendant is directed to prepare a judgment consistent with the views expressed in this Memorandum and Order, submit it to the attorney for plaintiff for approval as to form, and then further submit it to the Court for its approval and entry. It is ordered that this be done within thirty days from the date this Memorandum and Order is entered. This Memorandum and Order will constitute the findings of fact and conclusions of law of this Court. The Clerk of this Court is directed to file this Memorandum and Order and send copies of the same to the attorneys of record.

APPENDIX

# United States Patent Office

Des. 201,224
Patented May 25, 1965

201,224

COMBINED CONTAINER AND CARRIER FOR
BEVERAGE CANS OR THE LIKE

Alfred A. Schroeder, P.O. Box 12039, San Antonio, Tex.

Continuation of design application Ser. No. 71,350, Aug. 20, 1962. This application Apr. 28, 1964, Ser. No. 79,714

Term of patent 14 years

(Cl. D58—26)

Fig. 3

Fig. 1

[A2951]

Des. 201,224

PAGE - 2

*Fig. 2*

FIG. 1 is a top perspectvie view of a combined container and carrier for beverage cans or the like embodying my design;

FIG. 2 is a top perspective view thereof on an enlarged scale with the cover in open position; and

FIG. 3 is an elevational view thereof on an enlarged scale with the cover in open position.

This application is a continuation of my earlier application, Serial No. D–71,350, filed August 20, 1962, and now abandoned.

I claim:

The ornamental design for a combined container and carrier for beverage cans or the like, substantially as shown and described.

[A3397]

*References Cited by the Examiner*

UNITED STATES PATENTS

| | | |
|---|---|---|
| 2,465,644 | 3/49 | Graves. |
| 2,944,695 | 7/60 | Yusz. |
| 2,961,124 | 11/60 | Hunter et al. |

EDWIN H. HUNTER, *Primary Examiner.*

JOEL STEARMAN, *Examiner.*